204 N.J. Super. 550 (1984)
499 A.2d 546
JACK WESTRICH, PLAINTIFF,
v.
Y.D. McBRIDE, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided July 10, 1984.
*552 Robert J. DeGroot (Weiss, Turco and DeGroot) for plaintiff.
Mark Gruber (Gruber & Associates) for defendant-counter-claimant.
PETER B. COOPER, J.S.C.
The main issue presented for determination in this case is whether a tenant of leased professional offices may be granted an abatement of rent because of the landlord's failure to supply adequate heat, a breach of an express provision of the written lease between the parties. This Court holds that in limited commercial lease situations rent abatements may be available to a tenant whose use of the leased premises has been adversely affected to a significant degree by the landlord's breach.
This matter originated as an action for Summary Dispossess in the Superior Court, Law Division, Essex County, Special Civil Part. Plaintiff (hereinafter "landlord"), owner of a commercial premises in Newark sought judgment for possession based upon defendant's (hereinafter "tenant") non-payment of rent. Tenant's Motion to transfer the case to the Superior Court, Law Division, Essex County, pursuant to N.J.S.A. 2A:18-60 and R.6:4-1(g) was granted. Thereafter, tenant filed an Answer seeking an abatement in rent and a Counterclaim seeking damages and landlord amended the Complaint to include a demand for rents due.
The facts are as follows:
*553 The parties had entered into a written lease agreement whereby the tenant rented second floor offices for a period of one year commencing July 1, 1983 at a monthly rental of $375.00. Tenant, an optometrist, had purchased the practice of another optometrist, who had practiced out of the same office premises. Tenant asserted that her combined use of the same offices was necessary to retain the patronage of the Seller's patients. The lease provided that the premises were to be used for no other purpose than that of an optometrist's office. The lease contained an express agreement that heat was to be provided by the landlord.
Tenant raised the equitable defense that landlord breached the lease by failing to provide heat in the offices during the fall and winter of 1983-84. After written demands to landlord that adequate heat be provided and notice that further rents would be adjusted to reflect increased expenses incurred in attempting to obtain adequate heat, tenant, commencing December 1983, began deducting an amount from the rent and paid the reduced rent together with the amount deducted into her attorney's trust account. The payments were made as follows:

 Paid
 Month Rent Due into Trust Deduction
December 1983 $ 375 $ 358 $ 17
January 1984 375 375 -0-
February 1984 375 349 25
March 1984 375 319 56
April 1984 375 322 53
May 1984 375 321 54
 ______ ______ ____
 $2,250 $2,044 $206
 ====== ====== ====

Tenant proposed to withhold a total of $206 representing her estimate of the cost of operating electric heaters to bring the temperature in the offices to tolerable levels. Landlord commenced this action in February 1984 since he had not received the rent for several months.
*554 Tenant had kept a record of the daily temperatures in the offices for a period of months indicating that the temperature fell below acceptable levels of 68° F. during the heating season in violation of the Health Code of the City of Newark; specifically Section 15:4-17(c) of the Revised Ordinances of Newark. The records indicated that on several occasions the temperatures in the offices fell below 50° F. In addition, tenant, her employee and several of her patients all testified as to the lack of adequate heat in the offices on numerous occasions. This Court finds that by maintaining temperatures at the levels indicated by such evidence, landlord was in breach of his contractual duty to provide heat which impaired tenant's use of the offices.
(1) The issue in this case involves the remedies which may be available to a commercial tenant upon the breach of a provision in a lease by a landlord which substantially impairs the use of the leased premises. The Supreme Court in Marini v. Ireland, 56 N.J. 130 (1970), set forth the right of a residential tenant to repair defects that affect the habitability of the premises and to deduct the cost of the repairs from the rent. There are practical problems inherent in the repair and deduct remedy. In practice, the main avenue of relief to a residential tenant has become the rent abatement or rebate as approved in Berzito v. Gambino, 63 N.J. 460 (1973).
While the New Jersey Courts have refrained from applying the doctrines of Marini and Berzito to commercial tenancies, the principles have not been held inapplicable. "When and under what circumstances the doctrine of Marini should be applied in other than residential situations is a matter we leave open for future determination in an appropriate case," Kruvant v. Sunrise Market, Inc., 58 N.J. 452 at 456, mod. o.b., 59 N.J. 330 (1970). This Court holds that the facts of the present case are such as to permit the extension of the principles of Marini and Berzito to a commercial lease setting.
*555 In a somewhat analogous case, the Appellate Division of this Court allowed commercial tenants to assert the equitable defense that the landlord failed to provide adequate heat or air-conditioning in a summary dispossess action for non-payment of rent. The case involved several professional tenants in an office building. The Court, in a Per Curiam opinion, stated:
The present case is an appropriate one for the use of such defense since the `commercial tenants' are actually professional men renting relatively small premises for the delivery of personal services. Demirci v. Burns, 124 N.J. Super. 274 (Appl.Div. 1973).
The case presently before this Court evidences very similar circumstances. The relative bargaining positions of the parties, the type of use of the premises, and the equities involved in the breach of the lease are all quite similar.
(2) Landlord contends that his failure to provide adequate heat gives tenant, at best, a right to terminate the lease without further obligation. Drew v. Pullen, 172 N.J. Super. 570 (App. Div. 1980), held that a tenant is entitled to seek the full gamut of available remedies for a landlord's breach and is not held to the election of one to the exclusion of others. Thus, landlord's argument is erroneous. The remedies granted residential tenants in Marini and Berzito were grounded upon the theories expressed in Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969). That case involved a commercial tenancy and held that since the covenant of quiet enjoyment and the covenant to pay rent were mutually dependent, landlord's breach of the covenant of quiet enjoyment justified tenant's vacation of the leased premises and constituted a constructive eviction and a defense to the landlord's suit based on tenant's non-payment of rent for a period of time, within the lease term, but subsequent to tenant's removal from the leased premises.
The Reste decision signaled the demise of the doctrine of independent covenants in commercial leaseholds. Subsequent reported decisions, although distinguishable on facts, have construed commercial leaseholds not in accordance with the law of real property but with the law of contracts. See Ringwood *556 Assoc. Ltd. v. Jack's of Route 23, 166 N.J.Super 36 (App.Div. 1979); Carisi v. Wax, 192 N.J.Super 536 (Bergen County 1984). Applying these precedents, this Court holds that a lease, whether it be for a residence or for commercial purposes, is a set of mutually dependent covenants; i.e. the tenant's covenant to pay rent is dependent (among other things) on the landlord's covenant permitting the tenant the quiet enjoyment of the leased premises.
It is immaterial whether a landlord's breach constitutes an abrogation of a covenant of quiet enjoyment, a material failure of consideration, or a material breach of an implied warranty against latent defects. Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969) at 461. The relevant question is whether or not the breach by a landlord had a significant effect on a tenant's use of the premises. See Restatement Property 2d § 7.1 comment (c).
In the instant matter, tenant was conducting an optometry practice from the leased offices. The nature of the same is such that landlord's failure to provide heat substantially interfered with tenant's use of the premises. See C.F. Seabrook & Co. v. Beck, 174 N.J.Super 577 (App.Div. 1980). Applying the reasoning of Dimerci v. Burns, 124 N.J.Super 274 (App.Div. 1973), this Court concludes that this landlord's failure to provide heat relieved this tenant of the obligation to pay full contractual rent.
(3) What then are the remedies available to this tenant resulting from such breach? Berzito approved the theory of rent abatement or rebate. The measure of abatement or rebate is the difference between the rent due and the reasonable rental value of the premises in its defective condition.
In the present case, the tenant gave notice of the breach of the lease to the landlord on several occasions and the *557 landlord did nothing which remedied the situation. The tenant chose to deduct a sum (the additional cost of electricity used to operate electrical heaters), from the rent, rather than quit the premises. Applying the rationale of Berzito, this Court is satisfied that this tenant is entitled to an abatement of rent in the amount of the additional electricity charges, i.e. $206.00.
(4) Tenant's Counterclaim seeks damages for an assortment of losses that need not be set forth at length. In assessing damages arising from a breach of contract, the aim is to put the injured party in as good a position as if performance had been rendered. A.S. Development v. W.R. Grace Land Corp., 537 F. Supp. 549 (D.N.J. 1982). However, damages claimed in a breach of contract action must be reasonable, certain and not speculative. Prozel & Steigman v. Int'l Fruit Distributors, 171 F. Supp. 196 (D.N.J. 1959). The award of damages is left to the sound discretion of the trier of fact. Endress v. Brookdale Community College, 144 N.J.Super 109 (App.Div. 1976). This Court finds that, except for the increased electrical bills resulting from the use of the portable electric heaters, the direct damages attributable by the tenant to the cold conditions in the leased offices; i.e. damage to the defendant's supply of contact lenses and phoropter, have not been proven by a preponderance of the evidence and that the consequential damages asserted are merely speculative. In addition this Court notes that Article 21st of the lease appears to bar tenant's claims for both direct and consequential damages caused by the lack of adequate heat in the leased offices.
ACCORDINGLY:
(1) Landlord's demand for possession of the premises is denied;
(2) All rents shall be turned over to landlord less an abatement of $206.00; and
(3) Judgment is entered for landlord on tenant's Counterclaim.